# J. ADAM HECHTER vs. THE STATE OF MARYLAND.

*Criminal Law—Verdict of Guilty Upon Some Counts of Indictment Without Negativing Other Counts—Sealed Verdicts in Criminal Cases—Correction of Verdict.*

The first and second counts of an indictment charged the traverser with the crime of receiving stolen goods knowing them to be stolen, and the third and fourth counts charged him with being accessory before the fact to the larceny.   The verdict of the jury found the traverser guilty on the first and second counts and was silent as to the third and fourth. *Held,* that the verdict is valid and is equivalent to a verdict of not guilty upon the third and fourth counts.

Except in capital cases and those punishable by imprisonment for life, the Court has the power to allow the jury after reaching an agreement to sign and seal their verdict and then separate, a verdict being afterwards rendered in open Court in accordance with the verdict so signed and sealed.

The right to amend or correct a sealed verdict should be limited to such correction or amendment as will make the oral verdict given in Court correspond substantially with the sealed verdict.

Upon the trial of an indictment charging the traverser in the first and second counts with receiving stolen goods and in the third and fourth counts charging him with being an accessory before the fact to the larceny, the jury rendered a sealed verdict of guilty on the first and second counts but made no mention of the third and fourth. When this verdict was opened by the trial Judge and before the same was recorded, the Judge, against the objection of the traverser, allowed the jury to add to their sealed verdict the words "not guilty on the third and fourth counts," *Held*, that the verdict was valid before the words were added to it and was not rendered bad by the amendment, since such amendment did not add anything to the legal effect of the sealed verdict.

The case of *State* v. *Sutton*, 4 Gill, 494, holding that upon an indictment other than for murder containing more than one count, a verdict of guilty upon some counts without negativing the others is bad, overruled.

Appeal from the Criminal Court of Baltimore (WICKES, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Bernard Carter* and *Henry Duffy*, for the appellant.

I. Inasmuch as the crime charged in the first and second counts in the indictment (that of receiving stolen goods knowing them to be stolen) and the crime charged in the third and fourth counts (that of being an accessory before the fact to the larceny of the goods) are two distinct offenses, and there were thus two distinct issues to be found by the jury, their failure by their sealed verdict to find either guilty or not guilty on the third and fourth counts made said verdict a nullity, and therefore a verdict on which no judgment could be rendered, and one which must be set aside by the Court, and a new trial granted. *State* v. *Sutton*, 4 Gill, 494; *State* v. *Flanigan*, 6 Md. 167; *Mills* v. *Knott*, 12 Gill & J. 455; *Keirle* v. *Schriver*, 11 Gill & J. 405; *Poe on Pl.*, sec. 757.

If it should be contended by the appellee that the verdict of conviction on the first two counts, which charged the appellant with receiving the goods therein mentioned, knowing them to have been stolen, necessarily implied an acquittal on the third and fourth counts, which charges the appellant with

being accessory before the fact to the larceny of the goods in said counts mentioned, upon the ground that one cannot at the same time be guilty of larceny of goods and be guilty of receiving the same goods knowing them to be stolen, it is a sufficient answer to this proposition to say : *First.* That there is nothing on the face of the indictment to show that the goods mentioned in either the third or fourth counts are the same goods mentioned in the first or in the second count. The first count, while charging the receiving of 4,000 pounds of tin by the appellant, does not say that those articles had been stolen by Dorsey, and it is alleged that the reception of the goods took place on November 5th, 1900. The third and fourth counts, which charge the appellant with being accessory to the larceny of goods, charges him with being accessory to the larceny of goods *stolen by Dorsey ;* and, moreover, in the third count the larceny by Dorsey is charged to have taken place on November 2nd, 1900 ; and in the fourth count the amount of tin alleged to have been stolen by Dorsey, and in reference to which larceny the appellant is charged to have been an accessory before the fact, is 1,400 pounds, whereas the quantity mentioned in the first count to have been received by the appellant is 4,000 pounds.

It is perfectly manifest, therefore, that (1) the finding by the jury, under the first count, of guilty, may have been predicated upon evidence of goods received by the appellant which had been stolen by some one else than Dorsey, and, therefore, finding him guilty upon this count in no way negatived the charge made in the third count, nor the charge made in the fourth count, of being accessory before the fact to the larceny of goods by Dorsey. (2) Although the second count charges the appellant with receiving goods which had been stolen by Dorsey, it charges him with having received them on the 5th day of November, 1900, and charges the amount of goods to have been 4,000 pounds of tin ; and although the third count charges the larceny to have been 4,000 pounds of tin, it charges that the larceny took place on November 2nd, 1900, and that the appellant was accessory to the larceny before the fact.

Whatever, therefore, the appellant did in reference to the goods mentioned in this count, must have been done before November 2nd, 1900; there is, therefore, nothing on the face of this count to show that the goods therein mentioned are the same goods mentioned in the second count. It is entirely possible that the appellant may have, on the 5th of November, received from Dorsey 4,000 pounds of tin knowing that they had been stolen by Dorsey, and have also been accessory before the fact to the larceny of another 4,000 pounds of tin stolen by Dorsey on the 2nd of November, 1900. It is equally apparent from the foregoing that the larceny, in respect of which the appellant is charged with being an accessory in the fourth count, may have been of an altogether different lot of tin stolen by Dorsey from the lot of tin mentioned in the second count.

*Second.* Moreover, a party may have been accessory before the fact to the larceny of the same goods which, by his aid, passing into the exclusive possession of the thief, may have been afterwards delivered by the thief to the person who had been accessory; and, therefore, it is not true that a person can not be guilty of being an accessory before the fact of the larceny of goods, and of receiving the same goods, knowing them to be stolen.

II. It is well settled in Maryland that, when a jury have been authorized to bring in a sealed verdict, and they bring in such sealed verdict, and hand it to the Court to be opened, and it is opened by the judge and then read to the jury, any one or more of the jury before the verdict is recorded may refuse to assent to the verdict as sealed, and if such refusal takes place the verdict can not be accepted as the verdict of the jury and the jury are at liberty, then and there, in open Court, to reconsider of their verdict and make any changes in it upon which they may agree, no matter how great, even to the full extent of reversing the conclusion reached by them as stated in their sealed verdict, and thereupon present the new verdict to the Court which is bound to accept it ; or if any one or more of the jury, upon the sealed verdict being read to them, de-

clare their unwillingness to be bound by it, the Court may
send them back to their jury room to reconsider of their ver-
dict, and if they subsequently agree upon one and present it
to the Court, it must be accepted by the Court; or if when
the sealed verdict is presented and opened by the Judge and
it is, in his judgment, in any way defective he may, before it is
recorded, present the matter to the consideration of the jury
and they may, either in open Court or after they are sent back
to their room for the purpose, reconsider of their verdict and
supply the defect pointed out to them. *Edelen* v. *Thompson*,
2 Harris & Gill, 31; *Gaither* v. *Wilmer, Trustee,* 71 Md. 365;
*Givens* v. *The State,* 76 Md. 487.

Now if the principles thus established in reference to civil
actions, should be held applicable to criminal cases, it would
follow that, when a jury having been, on the adjournment of
the Court on a particular day, authorized to bring in a sealed
verdict in a criminal case, thereafter agree upon a verdict of
*acquittal,* or upon a verdict of *conviction,* reduce their verdict
to writing, sign it, place it in a sealed envelope and deliver it
to the foreman to be presented to the Court on its reassem-
bling the next day, and then separate and go to their homes
or mingle with the general public in the interval between their
separation and the time of presenting it to the Court, they
could, after the verdict has been so presented to the Court,
and before it is recorded, change the verdict from one of ac-
quittal to conviction, or from one of conviction to acquittal,
after it has leaked out, or some of them had told, what their
sealed verdict was, and after they had been subjected to in-
fluence brought to bear upon them to induce them to make
this change. It is submitted that the establishment of this
principle would be fraught with such danger to the liberty of
a citizen, and would so imperil the safe administration of the
criminal law of the State, as to prevent this Court from doing
now, what it has never done before, that is to say, lend its
sanction to the practice in question.

In the following cases it will be found that the principle is
fully established that in a criminal case, the oral verdict pro-

nounced by the foreman in open Court *cannot be received unless it is shown to accord substantially with the form sealed up by the jury before their separation.* Com. v. *Tobin,* 125 Mass. 206; Com. v. *Slattery,* 147 Mass. 425; Com. v. *Wait,* 132 Mass. 10; Com. v. *Durfee,* 100 Mass. 146; Com. v. *Doras,* 108 Mass. 492; Com. v. *Carrington,* 116 Mass.; State v. *Sergeant,* 11 Ohio, 472, 493; State v. *Ingle,* 13 Ohio, 490; *Farley* v. *People,* 27 North East R. 927; *Hochheimer, Criminal Law,* p. 329.

*Robert M. McLane, State's Attorney for Baltimore City,* (with whom was *Isidor Rayner, Attorney-General,* on the brief), for the appellee.

I. Even the form of verdict sealed by the jury and first delivered in Court, without the addition made in open Court, was a good and sufficient verdict. The two offences charged in the indictment (viz., receiving stolen goods and accessory before the fact to larceny) are *mutually exclusive,* so that a conviction on one necessarily implies an acquittal on the other. One cannot at the same time be guilty of larceny and of receiving the same goods, knowing them to be stolen. *Reg.* v. *Perkins,* 5 Cox C. C. 554; *Reg.* v. *Coggins,* 12 Cox C. C. 517; State v. *Honig,* 9 Mo. App. 301; s. c., 78 Mo. Rep. 252.

Appellant contends that the rule laid down in these cases applies only to principals in first or second degree and not to accessories before the fact. Such distinction, however, is not sound. An accessory before the fact is a felon and subject to the same punishment as the principals. (Code, Art. 27, sec. 156.) Moreover, the logical result of appellant's contention would be to subject an accessory in such cases to a double punishment, while the principals would only be subject to one. Suppose, for example, that A counsels B and C to commit a larceny; that B actually steals the property, while C, though actually absent, is yet constructively present at the time of the larceny; and that after the larceny, B takes the property to A and C, who divide it with B. Surely in such case, under the above authorities, A could only be convicted of being an ac-

cessory before the fact to the larceny; B could only be convicted as principal in the first degree in the larceny; and C could only be convicted of being a principal in the second degree. And yet, according to appellant's construction of the same authorities, while B could only be convicted as principal in the first degree in the larceny, and C could only be convicted as principal in the second degree; yet A could be convicted *both* for being accessory before the fact to the larceny *and* for receiving stolen goods, in which event he could be given the same sentence as either B or C, and an additional one from which they would both be protected.

There is nothing in the Maryland decisions, cited by appellant, inconsistent with appellee's contention. Wherever these cases have held a verdict of guilty on one count, without negativing the other, bad, it will be found that the counts were not *mutually exclusive*, and hence the traverser could never plead his conviction on one count in a subsequent trial upon the other. For example, rape and assault with intent to rape (*State* v. *Sutton*, 4 G. 494); or murder and manslaughter (*State* v. *Flannigan*, 6 Md. 171). Moreover, these two cases were decided upon the practice in England as stated by Chitty, the soundness of which the Court refused to recognize; adding that it did not intend to extend its ruling in *Sutton's case* beyond the case then before it. *Weighorst* v. *State*, 7 Md. 452–3; *State* v. *Flannigan*, 6 Md. 171.

In the following cases it has been held that on an indictment containing several counts, a verdict of " guilty " on one or more specified counts, means necessarily " not guilty " on the others. *Thomas* v. *People*, 113 Ill. 531; *Keedy* v. *People*, 84 Ill. 569; *People* v. *Whitson*, 74 Ill. 20; *State* v. *Belden*, 33 Wis. 120; *State* v. *Hill*, 30 Wis. 416; *People* v. *Gillmore*, 4 Cal. 376; *State* v. *Phinney*, 42 Me. 384; *Bonnell* v. *State*, 64 Ind. 498; *Weinzornflin* v. *State*, 7 Blackf. (Ind.) 168; *Hathcock* v. *State*, 88 Ga. 91; *People* v. *Dowling*, 84 N. Y. 483; *State* v. *Patterson*, 116 Mo. 505; *Bell* v. *State*, 48 Ala. 684; *Hurt* v. *State*, 25 Miss. 378; *State* v. *McNaught*, 36 Kan. 624; *George* v. *State*, 59 Neb. 163; *Kirk* v. *Com.*, 9 Leigh, 627; *Com.* v. *Bennet*, 2 Va. Cases.

II. Has a jury in a non-capital criminal case the right to amend in open Court a sealed verdict (taken with the assent of the accused) after an authorized separation of the jury but before recording of verdict, where the amendment, instead of being prejudicial, is favorable to the accused?

The existence of such right is clearly settled by *Edelin* v. *Thompson*, 2 H. & G. 31; *Gaither* v. *Wilmer*, 71 Md. 361; *Packing Co.* v. *Brown*, 87 Md. 1.

Apart from sealed verdicts, there has never been any difference between civil and criminal cases in the matter of rendering and recording verdicts in this State. In both, the verdict is rendered *viva voce* by the foreman; after which the clerk calls upon the jury to hearken to its verdict as the Court hath recorded it, and then repeats it. And until this has been done, and the jury has assented to (or, at least, not dissented from) it, *there is no verdict. Givens* v. *State*, 76 Md. 485. Before such recording the prisoner is entitled, as a matter of right, to a poll of the jury, and to have each juror assent to the verdict. *Williams* v. *State*, 60 Md. 402.

And if, through a mistake or any other reason, they deliver an erroneous verdict, it can be corrected before it is recorded. *Ford* v. *State*, 12 Md. 546. It is to secure certainty and accuracy, and to enable the jury to correct a verdict which they have mistaken, or which their foreman has improperly delivered, that they are called upon to " hearken thereto." *Givens* v. *State*, 76 Md. 485. Why then should not both civil and criminal cases be governed by the same rules in the matter of taking *sealed verdicts?* The object of allowing a sealed verdict in both classes of cases is the same, viz., the comfort of jurors.

Had appellant objected to the taking of a sealed verdict in his case, he was given full opportunity to make such objection known to the Court. But, so far from doing so, he assented. To what then did he assent? Was it not to the taking of a sealed verdict as defined by this Court in the above cases? And a fundamental characteristic of such a verdict is the authorized separation of the jury before rendering its verdict

in Court. Yet he now treats such separation as if it produced the same effect as a final discharge of the jury. But, as said in *Pehlman* v. *State*, 115 Ind. 131 (where the same rule was applied to *criminal* cases, which this Court has laid down in *civil* cases): " By permitting a jury to separate after they have agreed upon a verdict, and before it is returned into Court, nothing is waived, either as to the power or duty of the Court to have the verdict amended, if it shall prove to be a defective verdict, or as to the right of either party to object to the reception of an incomplete or improper verdict. Where a jury reassemble after an authorized separation, whether before or after agreeing upon a verdict, they resume at the point at which they left off, and proceed with the business before them as if no separation had taken place. Consequently, when a jury have been allowed to separate and return a sealed verdict, and upon reassembling the verdict is found to be defective, the jury may be required to retire to their room and make the proper amendment or correction. This is a rule of practice applicable to criminal as well as civil cases."

FOWLER, J., delivered the opinion of the Court.

The traverser was twice tried in the Criminal Court of Baltimore City upon an indictment containing four counts. The first and second counts charge him with having received a certain quantity of tin knowing it to have been stolen. The second is the same except that it names the alleged thief. The other two counts charge that the traverser was an accessory before the fact to the larceny. The first trial, the jury failed to agree; but on the second trial the jury brought in a sealed verdict convicting the traverser of receiving the stolen goods and recommended him to the mercy of the Court. The sealed verdict was as follows : " Guilty on the first and second counts as indicted and recommended to the mercy of the Court—and by request of the jury in open Court after their attention had been called thereto by the Court they desire to add " not guilty on the third and fourth counts." On motion of the traverser the Court below ordered that the following additional entry be entered on the docket.

" The argument of counsel for the State and for the traverser having been concluded on May 23rd, 1901, the jury withdrew from the Court room on said day in charge of a bailiff, to consider of their verdict, and were locked up in their room for this purpose ; and, on the evening of said day, agreed upon their verdict and sealed up the same, and thereupon separated, and went to their respective homes, and returned to the Court at its opening on the morning of May 24th, 1901, and then and there when asked by the Court whether they had agreed upon their verdict answered that they had, and being further asked whether it was a sealed verdict, replied that it is, and then and there delivered the same to the Judge presiding in said Court, and the same was opened and read by him, and after the attention of the jury had been called to the fact that their sealed verdict did not find whether the prisoner was guilty or not guilty on the third and fourth counts, and were asked by the Judge whether they desired to add to their said verdict a finding on said third and fourth counts, and their expressing the wish so to do, the Court, after the attorneys and counsel for the traverser had objected to any change in, or addition to, said sealed verdict, allowed the said jury to add to their sealed verdict the words ' not guilty on the third and fourth counts.' "

A motion to strike out the sealed verdict was then filed based upon the following grounds :

" 1. Because the jury did not by its sealed verdict, find whether the traverser was guilty or not guilty of the offenses charged in the third and fourth counts of the indictment, and did not find on all the issues upon which they were required to find their verdict.

" 2. The traverser moved the Court to strike out the words added by the jury to their sealed verdict in open Court on May 24th, 1901, that is to say, the words ' not guilty on the third and fourth counts.' And to sustain this motion, he relied upon the facts contained in the additional entry above set forth."

On the same day the traverser filed motions in arrest of

judgment and for a new trial—both of which were overruled, the former by the trial Judge and the latter by the Supreme Bench—whereupon the traverser was sentenced to be confined two years in the penitentiary. From this judgment he has appealed.

The record presents the following questions, first, was the sealed verdict as delivered to the Court, before it was amended, sufficient? Second, were the jury at liberty to amend their sealed verdict in the manner the record shows they did amend it?

1. It may be observed in the first place that it is conceded that there was nothing irregular in the fact that the jury were allowed under the circumstances of this case to bring in a sealed verdict, but the contention of the traverser is that the verdict is bad, not because it is sealed, but "inasmuch as the crime charged in the first and second counts (that of receiving stolen goods, knowing them to be stolen), and the crime charged in the third and fourth counts (that of being accessory before the fact to the larceny) are two distinct offenses; and there were thus two distinct issues to be found by the jury, their failure by their sealed verdict to find either guilty or not guilty on the third and fourth counts made said verdict a nullity, and therefore a verdict on which no judgment could be rendered." In support of this position strong reliance was placed upon the case of *State* v. *Sutton*, 4 Gill, 494. This case was decided in December 1846—more than a half century ago—and it was there held that on an indictment containing two counts, the first charging rape and the second, an assault with intent to commit a rape, a verdict of "guilty on the second count," without negativing the first count, was bad. In delivering the opinion of the Court JUDGE SPENCE said : "The law seems to be well settled upon authority that if the jury find but a part of the matters put in issue, and say nothing as to the rest it is ill." *King* v. *Hayes*, 2 Lord Raymond, 1521, and 1 *Chit. Crim. Law*, 641, are cited to sustain this position. Chitty does lay down the law on this question in accordance with the above quotation ; but in the following sen-

tence he says : "There are, however, so many instances in which a verdict *taking no notice of the aggravation* has been regarded as sufficient, that it does not seem to be necessary at the present day." And the case of *King* v. *Hayes, supra,* on which the conclusion reached in *State* v. *Sutton* rests, has been discredited even in England, so far as it was said to support the proposition contended for by the traverser, for in the case of *Latham* v. *The Queen,* 5 Best & Smith, 635 (1864), MR. JUSTICE BLACKBURN said that the point we are here considering was not passed upon in *King* v. *Hayes, supra.* And in the case of *State* v. *Hill,* 30 Wis. 419, LYON, J., for the Court said : "It has already been stated that the jury did not find expressly whether the defendant is guilty or not guilty of the charge of forgery contained in three counts of the information, but their verdict was silent in respect thereto." He then proceeds to dispose of the question thus presented. "We have not deemed it necessary to examine to any considerable extent the English cases on this subject, but it seems to be the opinion of the Court of King's Bench in *The King* v. *Hayes,* decided in 1727 (2 Raymond, 1518), that the ancient rule of law was that no judgment could be rendered on such a verdict. On the authority of a single case cited from 1 *Anderson,* 103, both Hawkins and Chitty (when speaking of a verdict which acquits of a higher offense and convicts of an inferior one), "if it merely find the defendant guilty of the inferior offense, it will be of no avail." The learned Judge then quotes the remark of the author which we have already quoted, to the effect that even at that time (1816), there were so many instances in which a verdict like the one we are here considering had been held sufficient, that it would be unnecessary to make it respond to every count. He then says that on the foregoing authorities the Court of Appeals of Maryland in *State* v. *Sutton, supra,* held that the verdict was bad if there was a finding on one count only, and concludes by holding "that a verdict which finds a defendant guilty upon part only of the counts in an indictment containing several counts, and is silent as to the other counts, *is equivalent to a verdict of*

*not guilty upon such other counts*, and must be so regarded."
The same proposition is supported by the following cases,
among others: *Edgerton* v. *State*, 5 Allen, 514; *Keedy* v.
*People*, 84 Ill. 569; *George* v. *State*, 59 Neb. 163; *Thomas* v.
*People*, 113 Ill. 531; *State* v. *Belden*, 33 Wis. 120; *State* v.
*Phinney*, 42 Me. 384. But without further citations we de-
sire in conclusion upon this branch of the case to cite *Selvester*
v. *United States*, 170 U. S. 262, which was decided by the
Supreme Court in 1897. The opinion was delivered by Jus-
TICE WHITE. He says, "the proposition is that the verdict of
guilty as to the separate offenses covered by the first three
counts was in legal intendment no verdict at all, because the
jury stated their inability to agree as to the fourth count, cov-
ering a different offense from those embraced in the other
counts. Reduced to its ultimate analysis," he continues, "the
claim amounts to this : That an indictment, although consist-
ing of several counts, each for a distinct offense, is in law an
indivisible unit, must be treated as an entirety by the jury in
making up their verdict, and such verdict in order to be valid
must finally pass upon and dispose of all the accusations con-
tained in the indictment." After tracing this "erroneous
theory" to the case of *Hayes* v. *The King*, *supra*, he cites the
case of *Latham* v. *The Queen*, *supra*, in which JUSTICE BLACK-
BURN said that there was no occasion to decide, and that the
Court of King's Bench did not decide, in that case that "no
verdict being given on one count vitiates a verdict on another
count which is good." The quotation from LORD BLACK-
BURN thus continues : "In civil cases there is only one pro-
cess against the defendant, and therefore if a new trial is
granted on part of the case it is granted on the whole.
But in a criminal case where each count is, as it were, a sepa-
rate indictment, one count not having been disposed of no
more affects the proceedings with error than if there were two
indictments." In conclusion LORD BLACKBURN said : "Each
count is in fact and theory a separate indictment, and no au-
thority has been produced to show that we ought to defeat
the ends of justice by such a technical error as this"—the

technical error referred to by his lordship, being the very one here complained of by the traverser. The rule in England, thus clearly announced in *Latham* v. *The Queen*, JUSTICE WHITE says has been applied generally in the American cases, citing *Whar. Crim. Pl. & Prac.*, sec. 740, and 1 *Bishop New Crim. Prac.*, sec. 1011, where a number of authorities are cited. *Classen's case*, 142 U. S. 140; *Dealy* v. *United States*, 152 U. S. 539; *Ballew* v. *United States*, 160 U. S. 187; *Putnam* v. *United States*, 162 U. S. 687. While JUSTICES GRAY, BROWN and SHIRAS dissented upon another ground, they concurred with the views of the majority upon the question we have been considering.

We conclude, therefore, that the weight of modern authority is opposed to the rule laid down in *State* v. *Sutton, supra*, and that we ought not any longer to be bound by it to the full extent there announced. Of course we do not intend by what we have said to criticise or in any manner challenge the correctness of the views announced in *State* v. *Flannigan*, 6 Md. 167, where it was held that on an indictment containing two counts both charging murder, a verdict of " guilty of manslaughter " without saying " not guilty of murder " is erroneous ; nor those in *Manly* v. *State*, 7 Md. 135, where it was held that on an indictment containing two counts, both relating to the same transaction, one charging *assault with intent to kill* and the other *assault and battery* a general verdict of guilty was good ; nor do we intend to deny the correctness of the decision in *Weighorst* v. *State, supra*, where it was decided upon an indictment containing one count charging murder that the verdict " Guilty of murder in the second degree " without negativing " murder in first degree " and " manslaughter " is sufficient. *State* v. *Flannigan, supra*, and *Weighorst* v. *State*, 7 Md. 442, and *Ford* v. *State*, 12 Md. 514, were all disposed of under our statute requiring the jury to specify in their verdict the degree.

2. It would seem that if, as we think, the sealed verdict in this case was good before it was amended, it was clearly not rendered bad by the addition or amendment which the Court allowed by adding the words " not guilty on the third and

fourth counts." The circumstances under which the verdict was corrected have already been narrated. *Before the jury was asked to hearken, and before the verdict was recorded the correction was made,* and if allowable at all, it was made at the proper time. Thus in the case of *Ford* v. *State,* 12 Md. 546, it is said: "If the jury, through mistake or partiality, deliver an improper verdict, the Court may, *before it is recorded* desire them to reconsider. They cannot, however, be allowed to make alteration after the verdict is recorded."

But it was contended that it would be a dangerous practice to allow sealed verdicts to be corrected or changed after the jury have separated and have an opportunity to be influenced in an improper and illegal way. In this we entirely agree, and hence we think that the right to amend or correct a sealed verdict should be limited to such correction or amendment as will make the oral verdict given in Court correspond substantially with the sealed verdict. In our opinion such was the result in the case at bar, for, as we have held, the sealed verdict, although it found only on the first and second counts and was silent as to the third and fourth, must be regarded, as a matter of law, as a verdict of not guilty on them, and hence the additional words "not guilty on the third and fourth counts" added nothing to the sealed verdict.

It is said by Mr. Hochheimer in his work on Criminal Law, p. 329, that "Excepting capital cases, and cases in which the sentence may be imprisonment for life, it has been held to be within the discretion of the Court to authorize the jury to separate after agreeing upon, signing and sealing a paper in the form of a verdict, and afterwards to return a verdict in open Court, *in accordance with the verdict so stated and sealed up.*" And so it has been held in a number of cases in Massachusetts. Thus in *Com.* v. *Tobin,* 125 Mass. 206, GRAY, C. J., said that in all misdemeanors, if not in all but capital crimes, a practice has been adopted of allowing juries to bring in sealed verdicts. In criminal cases, however, the oral verdict, he says, which is pronounced by the foreman in open Court cannot be received unless it is shown *to accord substantially*

with the form sealed by· the jury before their separation. See also *Com.* v. *Slattery*, 147 Mass. 425; *Com.* v. *Walsh*, 132 Mass. 10; *Com.* v. *Durfee*, 100 Mass. 146, &c.

It was suggested that if the whole doctrine of sealed verdicts be applied to criminal cases a sealed verdict of guilty · might be changed into a verdict of acquittal or *vice versa ;* but, as we have limited the application of the rule as applied .to criminal cases such a situation could not arise, for the sealed verdict cannot be substantially departed from. Of course there is always a possibility that one or more jurors may dissent from the sealed verdict in open Court. Nor can this be prevented whether the verdict be sealed or not for in either case a juror may dissent. It is said in. *State* v. *Engles*, 13 Ohio, 494: " The possibility that jurors may dissent from a verdict of guilty when polled, and cast upon the State the burden of a new trial, furnishes a sufficient reason to make Courts cautious in exercising.the discretion of allowing jurors to seal up their verdicts. "

But whatever may be the objections to sealed. verdicts in criminal cases, it must be admitted that the practice has long prevailed in Baltimore City and some of the Circuits to allow them except in capital cases and cases involving imprisonment for life. This is part of the growth of modern practice, in relief of the hardships and inconveniences to which jurors are necessarily subjected, but it cannot be carried beyond the point of reasonable safety to the administration of justice.. *Kramer* v. *Kister*,.187 Pa. 227.

The change or amendment of the verdict complained of was in favor of the traverser, and upon the whole case, even if we should concede some irregularity exists, we may say here, as LORD BLACKBURN said in *Latham* v. *The Queen, supra,* " No authority has been produced. to show that we ought to defeat the ends of justice by such a technical error as this."

*Judgment affirmed.*

(Decided January 17th, 1902.)