# LAWRENCE WILLIAMS *v.* STATE OF MARYLAND

[No. 451, September Term, 1969.]

*Decided May 13, 1970.*

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Henry L. Belsky* and *Cooper C. Graham* for appellant.

*William E. Brannan, Assistant Attorney General,* with
whom were *Francis B. Burch, Attorney General, Charles
E. Moylan, Jr., State's Attorney for Baltimore City,* and
*Joseph G. Koutz, Assistant State's Attorney for Balti-
more City,* on the brief, for appellee.

. ORTH, J., delivered the opinion of the Court.

The two questions on this appeal from judgments en-
tered against Lawrence Williams at a court trial in the
Criminal Court of Baltimore go to the sufficiency of the
evidence to sustain the convictions. As the court was the
trier of fact we are bound in our review by the clearly
erroneous rule, Maryland Rule 1086. In *Edwards v. State,
Memorandum on Motion For Reargument,* 198 Md. 132,
the Court of Appeals was asked how it could ever say
that the trial court is clearly wrong. It said, at 159, "This
question can only be answered as and when it is pre-
sented, case by case. * * * [I]t is to be expected that
such cases will be rare * * *." This is one of those rare
cases, for we find, applying the test set out in *Williams v.
State,* 5 Md. App. 450, that the trial court here was clearly
wrong in its judgments on the evidence. The judgments
are reversed.

Appellant was found guilty under a general verdict as
to indictment 5464 charging him with assault with intent
to murder Harold Gaines under the 1st count and the
assault and battery of Gaines under the 2nd count. He
was found guilty under the 1st count of indictment 5465
charging him with wearing a deadly weapon concealed
upon his person. A general sentence of 15 years was im-
posed on the convictions under 5464 and a concurrent
sentence of 2 years on the conviction under 5465.[1]

---

1. It is clear from the record that the case was before the court

We summarize the evidence before the court. Harold Gaines, age 27 years, married, the father of two children, one four years old and the other one year, called by the State, testified that on 28 June 1969 about 3:00 or 4:00 A.M. he was in the 2000 block of Madison Avenue. He was asked to tell the judge what took place. The transcript reads:

"A. I got shot in the neck.
Q. In the neck?
A. Yes.
Q. Who shot you?
A. As far as I know —
MR. LEVIN (defense counsel) : Objection.
A. — the one they called —
MR. LEVIN: Objection.
THE COURT: Sustained.
Q. (By MR. KOUTZ) [Assistant State's Attorney] : Would you be able to recognize the person that shot you if you were to see him in the courtroom?
A. Well, I didn't exactly see him fire.
Q. Well, would you be able to recognize that person if you were to see him in the courtroom?
A. Yes, I could.
MR. LEVIN: Objection, Your Honor. He al-

---

at the close of all the evidence on all counts of each indictment. Indictment 5465 contained four other counts in addition to the one of which appellant was convicted. The transcript of the proceedings reads with respect to the verdicts:
"THE COURT: *** The verdict is guilty in 5465. The verdict is guilty in 5464.
MR. LEVIN (defense counsel): First count, Your Honor?
THE COURT: Yes, first count of 5465."
The verdicts were not further explained. The docket entries read as to 5464, "Verdict: Guilty 1st count," and as to 5465, "Verdict: Guilty." Thus the docket entries are manifestly incorrect. The general verdict of guilty under 5464 had the effect of a finding of guilty on each of its two counts, *Manning v. State*, 2 Md. App. 177; the express finding of guilty under the first count of 5465 and the silence as to the remaining counts had the effect of a verdict of not guilty as to the 2nd, 3rd, 4th and 5th counts. *Gibson v. State*, 8 Md. App. 1.

ready answered he doesn't know who shot him.

THE COURT: He just said as far as he knows. Is that his answer?

MR. KOUTZ: Yes.

Q. (By Mr. Koutz) : Do you see that person in the courtroom?

THE COURT: Overruled.

Q. (By Mr. Koutz) : Do you see that person in the courtroom?

A. Yes.

Q. Where is he?

A. Sitting over there next to the judge (indicating).

Q. This man, this gentleman you are referring to (indicating) ?

A. Yes, sir.

MR. KOUTZ: Indicating the defendant, Your Honor, Lawrence Williams."

It was then elicited that he was by himself inside his car when he was shot, that he had no weapon of any kind, that he had an argument with appellant "once before but not that night," that he did not know why appellant shot him, that he only knew appellant by name, that he was in the hospital for over three months as a result of the shooting and was presently paralyzed from the waist down. Asked how far away was the person who did the shooting, Gaines said, "Just like the car was double parked and the pavement to the first floor window." He said he was shot through a first floor window of what he thought was 2019 Madison Avenue, and that a Barbara, whom he had known ever since he was a kid, lived there. On cross-examination he admitted that he did not know who shot him, did not see who shot him and that he told the police all he remembered was a flash. It appeared that he had been in the house and that only two other people were there, Barbara and appellant. Appellant was in bed but Gaines did not know if he was asleep or not because

he did not go into the bedroom. Gaines and Barbara were in the living room. "I had left a pair of pants there and a shirt which I took out of my car when I carried it from the shop, and I told her I needed them because I had to go to work the next morning. * * * She told me I couldn't have them, and I told her that I needed them. So that is when she went out and told the police that she wanted me to leave." He left the house, entered his car and started to drive away when he saw a flash come from the window. "It looked like it was coming towards my face, and that's when I turned my head and that's when the bullet lodged in my neck."

Officer Wayne Warner of the Baltimore City Police Department testified that about 4:40 A.M. on 28 June 1969 he received a call to go to the 2000 block of Madison Avenue. Arriving in front of 2009 Madison Avenue he saw a 1964 Chevrolet double parked. Gaines, in a "semi-conscious" condition was in the driver's seat slumped over the wheel. Warner asked what had happened and Gaines said he was shot. An ambulance arrived and as they were putting Gaines in it Warner asked him who shot him. "He stated that Joe Williams shot him. * * * At the hospital I again talked to Mr. Gaines, and he was in a very weak condition, and I again asked him at this time what happened, and the only thing he could tell me was that Joe Williams shot him with a .45 caliber automatic through the first floor window in Barbara Griffin's apartment on Madison Avenue." (Gaines said he knew appellant by the name of Joe Williams.) About an hour after the shooting Warner went back to 2009 Madison Avenue, knocked on the door and received no answer. He observed that a screen over a first floor front window in an apartment occupied by Barbara Ann Griffin had a hole in the lower part "and the little wires were pointed outwards towards the street." He checked the screen for powder burns but "couldn't say now what was on it." Warner said that at a preliminary hearing he was sitting next to appellant waiting for the case to be called. Appellant struck up a conversation. He asked how bad Gaines was hurt, inquired when

the case was coming up, said he was trying to get a lawyer and was unable to do so, "things like that." During the course of the conversation appellant said, "I didn't give the gun to my brother, I threw it away."

Appellant was arrested at 2405 Francis Street by Sergeant Edmond Solinsky while "in company with a woman who identified herself as Barbara Ann Griffin" of 2009 Madison Avenue. The Sergeant gave appellant the *Miranda* warnings and patted him down. Appellant said that "he gave the gun to his brother, Preston Williams, to get rid of it." An attempt was made to interrogate him at the station house but he chose to remain silent.

The State rested. Motion for judgment of acquittal was made. It was denied without reason stated for the ruling. Appellant testified in his own behalf. He said he was in Barbara Griffin's house the morning of the shooting. "And I went to sleep down there, and the next thing I know I was aroused by a shot. This is all I know happened down there." It was then elicited that when he was awakened by the shot "Barbara had a gun in her hand, and she told me she had shot at him because he had been to the house earlier that night * * * and they had got into a quarrel, or a fight, or something, and after I had seen he was hurt —I didn't know how bad he was hurt—I ran because I was panicky, I was scared, I didn't want to get involved * * * because I am married." Asked about the gun, he said, "She had it. I took it away from her and throwed it away when I was leaving. * * * Protecting myself and her. * * * She said she shot him in the arm. So I just took the weapon and throwed it away." He denied he had fired the weapon at any time and denied he had quarreled with Gaines that day. On cross-examination he said he had run out the back door because "I didn't want nobody to see me." He dropped the gun "out there in the alley * * * I just throwed it." He said he did not answer any questions because he called his lawyer at the police station and his lawyer advised him not to say anything. He denied seeing Gaines in the house or in the car. He went to his mother's house and was arrested there.

In rendering its verdicts the court said:

"Mr. Williams, I find that the testimony of the State is enough to convict you under the two counts—the evidence that you were in the room, the evidence that the gunshot came from that room, the evidence that you made certain statements about the gun. At no time until you get on the defense stand today do you say anything about the fact that you didn't do it, and then you say in your testimony that the other person with you, in fact, did it."

First we find that the evidence was not sufficient in law to sustain the conviction under indictment 5465. It did not show beyond a reasonable doubt, directly or by rational inference, that appellant had carried the gun concealed upon his person.

Second we find that the evidence was not sufficient in law to sustain the convictions under indictment 5464. Assuming that the *corpus delicti* of assault with intent to murder and assault and battery were proved, the evidence did not establish beyond a reasonable doubt that appellant was the criminal agent. The evidence did support a finding that the shot was fired through the window in Barbara Griffin's apartment. But it is apparent from Gaines' testimony that he did not have facts within his knowledge to support his statements to the police that appellant had shot him and that the shot had been fired from a .45 caliber gun. Gaines not only admitted on the stand that he did not know who fired the shot but that he knew of no reason why appellant would shoot him. Nor did the finder of fact rely on Gaines' declarations as to the identity of his assailant in finding appellant guilty. It based its verdicts on evidence that the shot was fired from the front room of Griffin's apartment, that appellant was in the room from which the shot was fired, on the admission of appellant about the gun, and on the fact that he did not deny he fired the shot until he was testifying in court. We observe that there was no evidence

that appellant was in the room from which the shot was fired at the time it was fired. That appellant was in the apartment, that he admitted throwing the weapon away after the shooting, that he fled and that he did not tell the police that it was Barbara Griffin who fired the shot, was reason for the trier of fact to suspect that appellant was the criminal agent, but these matters were not enough in the circumstances here for it to find beyond a reasonable doubt that he was the criminal agent. Evidence adduced by the State showed that it was after appellant spoke to a lawyer that he "chose to remain silent," and it was not contradicted that the lawyer told appellant not to say anything. Appellant was not the only person in the apartment at the time of the shooting; Barbara Griffin was also present. It seemed that only appellant and Barbara Griffin were in a position to know who actually fired the shot. Appellant said she did, but she was not called to testify by the State. However, her name was listed as a witness on the presentments and the indictments. A subpoena was issued for her to appear and testify for the State, and was returned by the Sheriff with the notation that she had been summoned. As we feel that the direct evidence adduced and the evidence that could be supplied by rational inference therefrom were not sufficient for the court as the trier of fact to find beyond a reasonable doubt that appellant was the criminal agent in the crimes charged by indictment 5464, its judgment on the evidence was clearly erroneous.

We think that the record before us indicates that additional probative evidence of guilt can be adduced by the State at another trial. We award a new trial as the interests of justice appear to require it. *Gray v. State,* 254 Md. 385, 397.

> *Judgments under indictments nos. 5464 and 5465 reversed: Cases remanded for a new trial.*