FRANK L. HARRINGTON *v.* STATE OF
MARYLAND

[No. 314, September Term, 1972.]

*Decided February 21, 1973.*

158

The cause was argued before ORTH, C. J., and CARTER and GILBERT, JJ.

*Burton W. Sandler* and *William E. Seekford* for appellant.

*David B. Allen, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Alan G. Horwitz, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Frank L. Harrington, appellant, was convicted in the District Court of Maryland (First District—Baltimore City) of violating Md. Ann. Code Art. 66A, §§ 2 and 19(b). Art. 66A is concerned with the Maryland motion picture censorship law. Appellant was fined $50.00 for each violation. Within the prescribed time, appellant noted an appeal to the Criminal Court of Baltimore

where his cause was heard *de novo* [1] in a non-jury trial. The trial judge found the appellant guilty of violating Md. Ann. Code Art. 66A, § 2 and imposed the same fine that had been meted out to the appellant in the District Court. No verdict was entered with respect to § 19(b). Of course, the failure to find a verdict in respect to the charge brought under § 19(b) is equivalent to a verdict of not guilty on that particular charge. *Gibson v. State,* 8 Md. App. 1, 256 A. 2d 890 (1969). Appellant petitioned for, and we granted, certiorari.

Here, appellant posited seven contentions as to why the judgment of conviction should be reversed. Since we agree with the appellant that the conviction must be reversed, we find it necessary to answer only three of the questions raised.

## THE FACTS

On instructions from his superiors, Detective William J. Perry visited the premises situate at 409 East Baltimore Street on September 7, 1971, at 10:45 a.m. According to Perry, there was no identification by way of a business name on the exterior of the premises. It was subsequently learned that the premises were used by Gayety Books, Inc. Signs on the exterior of the building indicated that "peep shows" could be viewed inside the premises. According to Detective Perry, he "browsed for about five or 10 minutes among books and magazines displayed" and then requested from an attendant four quarters in exchange of a dollar bill. Perry proceeded through an entrance marked "Peep Shows" where he observed eight or ten booths. Each booth was about three feet by five feet in size. Perry placed a quarter in a slot located in the viewing device and observed a segment of film [2] depicting a male human being and a

---

1. Md. Ann. Code Art. 26, § 156, and Art. 5, § 30.
2. Md. Ann. Code Art. 66A, § 1 defines the word "film," as used in this article, to mean "motion picture film" and it includes "any film shown with or by new devices of any kind whatsoever, such as slot or coin machines, showing motion pictures." In *Sanza*

female human being engaged in "perverted sexual acts." Perry stated that the first segment of the film was approximately three minutes in duration, and that in order to view the film in its entirety six quarters were required to be placed in the machine. Perry further said that after the insertion of the sixth quarter he viewed the end of the film and the beginning of the same film a second time. Perry's primary mission at the "peep show" was to determine whether or not a "Seal of Approval from the Maryland Motion Picture Censor Board" was displayed on the film as required by Md. Ann. Code Art. 66A. Observing that the "seal of approval" was not present, he then made application for a search and seizure warrant. The warrant was duly signed by a judge of the Supreme Bench of Baltimore City. Thereafter, on September 10, 1971, execution of the warrant was effected and various cassettes of film were seized. On the same day, the appellant was arrested on a warrant of the District Court, charging violations of Art. 66A.

At the trial in the Criminal Court, Perry admitted that he did not observe the appellant on the premises at any time. There was no evidence that the appellant was ever on the premises. An assistant Attorney General testified that he had interviewed the appellant following appellant's arrest. The appellant told him that he (the appellant) did not own the machines from which the films were taken, but that the appellant received a "ten percent interest from the grosses of the machines as determined by an unidentified person, a person whom he refused to identify who came by on a daily or weekly basis to pick up the money that had been placed in the machines." The Assistant Attorney General said that the appellant stated that appellant was "an officer of the corporation who owned the premises and that a certain amount of space was leased to an individual who placed the machines in there." No inquiry was made as to the

---

*v. Md. State Board of Censors*, 245 Md. 319, 226 A. 2d 317 (1967), the Court of Appeals defined the word "film" as used in Art. 66A to mean film displayed commercially for profit.

names of any other person or persons who might have had financial interest in Gayety Books, Inc. The Assistant Attorney General said, "Mr. Harrington's name was on the traders license, Mr. Harrington was president of it [Gayety Books, Inc.]" The State placed into evidence separate trader's licenses for 405 and 409 East Baltimore Street, upon which appears the following typed legend:

> "Gayety Books, Inc.
> Frank L. Harrington, Pres."

A third license, also in evidence, is entitled, "Chain 2 Stores License," and it bears the same legend as the first two. All three licenses were issued on June 4, 1971. An "Application for Business Licenses—1971" for the premises at 405 East Baltimore Street was received into evidence which is signed "Frank L. Harrington, Pres."

Charles W. Thompson, Jr., Administrative Specialist for the Motion Picture Censor Board, testified that he had viewed all of the cassettes of film, after their seizure by the police, and that none of them had ever been submitted to the Board for a "censorship seal." Appellant's counsel conceded that the appellant was the president of Gayety Books, Inc. at the time of the execution of the search and seizure warrant.

Unfortunately for the State, on the day following his testimony, the Assistant Attorney General wrote a letter to the trial judge in which he advised the court that:

> "It was suggested that I had spoken to more than one defendant that day [the day of the alleged interview with appellant Harrington] and had Mr. Harrington confused with someone else. . . . After reading all of the reports I am convinced in my own mind that a mistake was made by me and that the person with whom I had the conversation that I testified to yesterday was [not Harrington]. . . . Mr. Harrington did not make the admissions that I ascribed to him yesterday."

Copies of the letter were sent to all counsel. The trial judge introduced the letter as a "court's exhibit" and struck from the record all testimony of the Assistant Attorney General with respect to "an alleged conversation he had with Mr. Harrington at the time of the arrest pursuant to the warrant." The State was then left with the four exhibits pertaining to the trader's license and application therefor, and with the testimony that there were no seals on the film, that Harrington had never been observed on the premises, and that the film had never been submitted to the censorship board.

The appellant did not testify.

# I

The appellant first argues that he was convicted "under a statute not contemplating his actions as criminal and for a crime of which he was not charged." Md. Ann. Code Art. 66A, § 2 provides:

> "It shall be unlawful to sell, lease, lend, exhibit or use any motion picture film or view in the State of Maryland unless the said film or view has been submitted by the exchange, owner, or lessee of the film or view and duly approved and licensed by the State of Maryland Board of Censors, which shall be a part of the Department of Licensing and Regulation . . . ."

Art. 66A, § 20 mandates the penalties to be imposed for violation of § 2.[3]

---

3. The section provided:
"Any person who violates [Art. 66A] . . . shall be sentenced to pay a fine of not less than twenty-five dollars, nor more than fifty dollars, for the first offense. For any subsequent offense the fine shall be not less than fifty dollars, nor more than one hundred dollars. In default of payment of a fine and costs, the defendant shall be sentenced to imprisonment in the prison of the county, or in Baltimore City, where such offense was committed, for not less than ten days, and not more than thirty days."
On July 1, 1972, however, the law was changed so that the provision for imprisonment was deleted.

A criminal statute must be sufficiently explicit so as to enable a person of ordinary intelligence to ascertain what it prohibits and what conduct on his part will render him liable to its penalties. *Papachristou v. City of Jacksonville,* 405 U. S. 156, 92 S. Ct. 839, 31 L.Ed.2d 110 (1972) ; *United States v. Harriss,* 347 U. S. 612, 74 S. Ct. 808, 98 L. Ed. 989 (1954) ; *Bacheller v. State,* 3 Md. App. 626, 240 A. 2d 623 (1968) *rev'd on other grounds* 397 U. S. 564, 90 S. Ct. 1312, 25 L.Ed.2d 570 (1970).

Md. Ann. Code Art. 66A, § 19(a) establishes both the procedural aspect for obtaining approval from the Board and the right of appeal to the courts from any adverse decision of the Board. There can be no doubt but that the State has the right to require the submission of film for prior approval. See *Times Film Corp. v. Chicago,* 365 U. S. 43, 81 S. Ct. 391, 5 L.Ed.2d 403 (1961) ; *Freedman v. Maryland,* 380 U. S. 51, 85 S. Ct. 734, 13 L.Ed.2d 649 (1965) ; *Star v. Preller,* Civil No. 72-27-Y, D.C. Md. decided October 5, 1972.

It is constitutionally permissible for the State to attach criminal sanctions for failure to comply with a statute which requires, before one may "sell, lease, rent or exhibit . . . motion picture film . . .," one must first obtain approval from the Maryland Board of Censors. It would indeed be incongruous for the legislature to enact a law to require the necessity to obtain prior approval from the Board and not at the same time to provide for enforcement of its legislative mandate.

> "Whether proscribed conduct is to be visited by a criminal prosecution or by a *qui tam* action or by an injunction or by some or all of these remedies in combination is a matter within the legislature's range of choice." *Kingsley Books, Inc. v. Brown,* 354 U. S. 436, 77 S. Ct. 1325, 1 L.Ed.2d 1469 (1957).

*See also Star v. Preller, supra.*

We think Md. Ann. Code Art. 66A, § 2 to be clear,

definite and unambiguous. We believe any person of ordinary intelligence to be able to ascertain readily what is required of him if he desires to "sell, lease, lend or exhibit" motion picture film, commercially, and to know that a failure on his part to comply with the requirement will subject him to penalty.

## II

Appellant next argues that the seized films were "presumptively protected first amendment materials" and could not be seized without a "judicially superintended prior adversary hearing in order to support probable cause." Appellant misconstrues the law as set forth in the two cases he cites to support his position, *i.e., Marcus v. Search Warrant,* 367 U. S. 717, 81 S. Ct. 1708, 6 L.Ed. 1127 (1961), and *A Quantity of Books v. Kansas,* 378 U. S. 205, 84 S. Ct. 1723, 12 L.Ed.2d 809 (1964). Both cases dealt with the issue of obscenity. There is no question of violation of obscenity laws involved in the instant case; appellant was convicted of displaying films without having first presented them to the Board of Censors for its "seal." The State has the right to require an exhibitor to submit a film to the Maryland State Board of Censors for its examination or censorship prior to any public viewing of the film, *Times Film, supra; Freedman, supra; Star v. Preller, supra.* Motion pictures are not "necessarily subject to the precise rules governing any other particular method of expression." *Joseph Burstyn, Inc. v. Wilson,* 343 U. S. 495, 72 S. Ct. 777, 96 L. Ed. 1098 (1952) ; *Times Film, supra; Star, supra.*

## III

Appellant avers that "merely being a corporate officer at the time of offense is insufficient to find that officer guilty of corporate offense."

In 19 Am.Jur.2d, *Corporations,* § 1391, it is said at 786-787 :

"It is generally held that a director or officer of a corporation is not liable for an offense committed by the corporation, except where he has in some way participated with the corporation in the illegal act as a principal or as an aider, abetter, or accessory, notwithstanding the corporation's offense consists of a violation of a statute which imposes imprisonment as a penalty. An officer of a corporation, no matter how great his responsibility, is not as a general rule criminally liable for the acts of the corporation performed through other officers and agents who are not acting under his direction or with his permission." (Footnotes omitted).

Md. Ann. Code Art. 66A, § 2 makes it unlawful for an *"exchange, owner* or *lessee"* to "sell, lease, lend, exhibit or use" motion picture films that have not been submitted to the Motion Picture Censor Board for approval and licensing. In the instant case, the corporation, Gayety Books, Inc., is presumably the "owner or lessee" of the cassettes of film that were illegally displayed.

An affidavit of corporate counsel was filed in the proceeding that states that the appellant Harrington is not a principal in the corporation nor does he own any interest therein. While a principal owner of a corporation might, under some circumstances, be held to be synonymous with the corporation, such is not the situation here. Seemingly, Harrington is but a figurehead for others seeking anonymity behind a corporate entity. There is no proof in the record before us that Harrington, either individually or in a corporate capacity, was the "exchange, owner or lessee" of the film that was exhibited in violation of § 2. The evidence simply does not connect appellant Harrington with the offense charged. The fact that Harrington was the president of the corporation at the time of the offense does not *per se* impute to him the degree of criminal responsibility required to sustain the conviction. There is no showing

that Harrington "in some way participated with the corporation in the illegal act as a principal or as an aider, abetter, or accessory," or that he personally owned, exchanged or leased the film.

If the testimony of the Assistant Attorney General had been correct, the State may have met its burden, but inasmuch as the Assistant Attorney General's testimony was erroneous, and consequently stricken by the trial judge, the State was left with having the substance of its proof confessedly destroyed. As a result, the only evidence before the trier of fact was the testimony of Perry and Thompson, the trader's licenses, and the affidavit of the corporate counsel. None of these, individually or collectively, were sufficient to show that the appellant participated in some way in a violation of Md. Ann. Code Art. 66A, § 2. The State apparently relied heavily upon the testimony of the Assistant Attorney General and, as a consequence, failed to produce through subpoena the corporate by-laws or minutes which may have delineated the clear areas of responsibility of the corporate officers and may have shown appellant's participation in the violation.

As we said in *Craig v. State*, 14 Md. App. 515. 287 A. 2d 330 (1971):

> "We think that the finger of suspicion may well point toward the appellant, but suspicion is not the basis upon which a conviction may be predicated. There must be evidence which, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the appellant's guilt."

The State, at a retrial of the case, may be able to supply the proof necessary to show that the appellant participated with the corporation in the illegal act as a

principal, aider, abetter or accessory, and we therefore remand for a new trial.

*Judgment reversed and case remanded for a new trial. Costs to be paid by the Mayor and City Council of Baltimore.*