996 A.2d 367

**STATE of Maryland**

v.

**Andre Lynn PRUE.**

**No. 21, Sept. Term, 2009.**

Court of Appeals of Maryland.

June 8, 2010.

Sharon Stanley Street, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, of Baltimore, MD), on brief, for petitioner.

Kellie M. Black, Asst. Public Defender (Elizabeth L. Julian, Acting Public Defender, of Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

ELDRIDGE, J.

The controversy before the Court in this criminal case arises because the trial judge, as the trier of facts, failed to announce verdicts on six counts of the nine-count indictment against the respondent, Andre Lynn Prue. The Court of Special Appeals held that the trial judge's silence amounted to

acquittals on the six counts. This Court granted the State's petition for a writ of certiorari which challenged that holding by the Court of Special Appeals.

## I.

The facts pertinent to the issue before us are as follows. The respondent Andre Lynn Prue and his girlfriend, Barbara Kidd, were riding on a motorcycle on Smallwood Drive in Waldorf, Maryland. The trial judge, at the conclusion of Prue's nonjury trial, found as a fact that Prue and Kidd were jointly operating the motorcycle when it careened into the guardrail and curb of a bridge on Smallwood Drive. Kidd was killed and Prue was severely injured.

Prue was charged, in the Circuit Court for Charles County, with the following nine offenses: vehicular manslaughter (count 1), vehicular homicide while under the influence of alcohol *per se* (count 2), vehicular homicide while under the influence of alcohol (count 3), vehicular homicide while impaired by alcohol (count 4), driving while under the influence of alcohol *per se* (count 5), driving while under the influence of alcohol (count 6), driving while impaired by alcohol (count 7), reckless driving (count 8), and possession of marijuana (count 9). Prue waived his right to a jury trial, and his nonjury trial in the Circuit Court for Charles County took place over several days in March 2007.

On the last day of the trial, prior to closing arguments, the prosecuting attorney raised with the trial judge an issue concerning the possible merger of certain charges, stating:

"Your Honor, I think when all is said and done, out of the nine counts you have on the indictment, there are only two counts the court needs . . . to decide. That would be count one, the manslaughter count, and count nine, the possession of marijuana [ ]count."

The prosecuting attorney then proceeded to review the evidence relating to the marijuana charge. While the attorney for the State was concluding his review of this evidence, the court interrupted him and asked whether count 2, vehicular

homicide while under the influence of alcohol *per se,* would merge into count 1, the manslaughter charge. The record reflects the following exchange:

"PROSECUTING ATTORNEY: [A]ll this has demonstrated beyond a reasonable doubt, [that] Mr. Prue was, in fact, in possession of that marijuana, that was found by Officer St. Germain. Of the other eight counts, counts two through eight, we're going—are going to merge into count one, manslaughter.

"Everything else is (unintelligible) defense. So let's talk about—let's talk about that. Lastly before—

"THE COURT: Does two merge?

"PROSECUTING ATTORNEY: Yes.

"THE COURT: Are you sure?

"PROSECUTING ATTORNEY: Yes, because it is going to be—all count two is, is a homicide under the influence. A lesser included of manslaughter. Manslaughter requires gross negligence. Well, okay, I guess we could take—we could say—

"THE COURT: There's a different element.

"PROSECUTING ATTORNEY:—count two—count two requires the BAC, plus negligence, plus death. Where manslaughter requires gross negligence plus death.

\* \* \*

"THE COURT: Yeah, so, I would agree with you on the other ones though. I think the other ones pretty well merge into two.

"PROSECUTING ATTORNEY: Yes.

"THE COURT: Yeah.

"PROSECUTING ATTORNEY: So absolutely. Absolutely.

"THE COURT: Yeah.

"PROSECUTING ATTORNEY: But I think in terms of sentencing, should the court find him guilty in both counts one and two, I think the court (unintelligible) sentences. So all right, we're fine.

"Really the issue though comes down to—to gross negligence."

The attorney for the State then continued his review of the evidence, pointing out that the defendant had admitted to drinking alcohol on the night of the accident. Defense counsel made no comment regarding the possible merger of charges.

Following closing arguments by both the prosecuting attorney and defense counsel, the trial judge rendered findings of fact on the contested factual issues. The judge ultimately concluded that Prue's "conduct evidence[d] a wanton or reckless disregard for human life."

The trial judge then announced the verdicts as follows:

"So we will enter verdicts of guilty on count one [vehicular manslaughter], two [vehicular homicide while under the influence of alcohol *per se* ] and nine [possession of marijuana]. Sufficient to say the evidence is uncontradicted as to count nine, possession of marijuana. Okay. When do you want sentencing?"

There were no verdicts announced with respect to counts 3 through 8. Although the transcript does not reflect any mention of counts 3 through 8 by the trial judge during his rendition of the verdicts or thereafter during the final day of the trial, the docket entry for that day of the trial reads (corrected for typographical errors):

"Opinion given by Court.

Court finds Deft guilty of:

Count 1—Negligent Manslaughter—Auto/Boat/Other Vehicle

Count 2—Negligent Homicide—Other Vehicle Under Influence

Count 9—Possession—Marijuana

Count 3 thru 8 to merge with Count 2."

On May 11, 2007, Prue was sentenced on count 1 to ten years in prison with all but four years suspended. On count 2, charging vehicular homicide while under the influence of alcohol *per se,* Prue was sentenced to serve two years incarcera-

tion, concurrent with the sentence on count 1. Finally, he received a suspended sentence on count 9, the possession of marijuana charge. Prue was also ordered to serve four years of supervised probation upon his release from prison.

Prue noted an appeal to the Court of Special Appeals, arguing that, because the trial court did not render verdicts on counts 3 through 8, the docket entries should be corrected to reflect an acquittal on those charges. Prue also argued that the trial court erred by imposing separate sentences for vehicular manslaughter (count 1), and vehicular homicide while under the influence of alcohol *per se* (count 2). He further contended that the evidence was insufficient to support his convictions.

In an unreported opinion, the Court of Special Appeals rejected Prue's claim that the evidence was insufficient to support his convictions, but agreed with Prue's two other allegations of error. The Court of Special Appeals held that the trial judge's silence on counts 3 through 8 amounted to acquittals on those counts and ordered that the docket entries be corrected to reflect this. The intermediate appellate court also held that the two-year sentence on count 2 should have merged into the ten-year sentence for vehicular manslaughter. Accordingly, the Court of Special Appeals vacated the sentence on count 2.

The State petitioned this Court for a writ of certiorari, challenging the Court of Special Appeals' holding that the trial court's silence on counts 3 through 8 constituted an acquittal on each of those counts. The State did not challenge the Court of Special Appeals' decision with regard to count 2, and Prue did not file a cross-petition for a writ of certiorari. This Court granted the State's petition. *State v. Andre Lynn Prue,* 407 Md. 529, 967 A.2d 182 (2009).

## II.

The Court of Special Appeals and both parties in this Court correctly viewed this case as one where the trier of facts failed to render verdicts on counts 3 through 8. Where the trier of

facts in a criminal case fails to render verdicts on certain counts, Maryland law is firmly settled. Unless one of a few well-established exceptions apply, when rendering verdicts in a multicount charging document, silence by a trial judge or jury on one count is equivalent to an acquittal on that count.

Initially under Maryland law, when the trier of facts rendered a guilty verdict on one or more counts of a multicount indictment but failed to render a verdict on one or more other counts in the same indictment, the action by the trier of facts was treated as a complete nullity as to all of the counts, and the defendant could be tried again on all of the counts in the indictment. Thus, in *The State v. Sutton*, 4 Gill. 494 (1846), involving a two-count indictment, the jury found the defendant guilty on one count but omitted to render a verdict on the other count. This Court, in deciding that the action of the jury was a nullity but that the defendant could be retried on both counts, held as follows (4 Gill. at 497–498):

"The law seems to be well settled upon authority, that if a jury find but a part of the matters put in issue, and say nothing as to the rest, it is ill. *King v. Hayes*, 2 Ld. Raymond [1518,] 1521 [ (1727) ] . . . .

\* \* \*

"If the law requires all the matters involved in a single issue, to be found by the jury, unquestionably, it requires, where there are two or more issues submitted to the finding of the jury, that they should find upon each, and all, of the issues.

"This verdict, therefore, in the language of the books, was ill, and should have been set aside by the [trial] Court."

*See also State v. Flannigan*, 6 Md. 167, 171–172 (1854).

The holding in *The State v. Sutton, supra*, remained the law of Maryland for more than 50 years. In *Hechter v. State*, 94 Md. 429, 442, 50 A. 1041, 1043 (1902), however, this Court overruled *Sutton* and held that silence by the trier of facts on some counts, when the formal verdicts are rendered, ordinarily constitutes an acquittal as to those counts. Judge Fowler for the Court in *Hechter*, 94 Md. at 440, 50 A. at 1042, initially

observed that the English decision upon which the *Sutton* case relied, *King v. Hayes, supra,* "has been discredited even in England." Judge Fowler went on to discuss or cite numerous cases in other states, a leading English opinion, and the United States Supreme Court's opinion in *Selvester v. United States,* 170 U.S. 262, 18 S.Ct. 580, 42 L.Ed. 1029 (1898), all of which were inconsistent with the rule applied in the *Sutton* case. The Court in *Hechter* then stated (94 Md. at 442, 50 A. at 1043):

> "We conclude, therefore, that the weight of modern authority is opposed to the rule laid down in *State v. Sutton, supra,* and that we ought not any longer be bound by it ..."

In accordance with the Supreme Court's *Selvester* opinion and the other cases discussed or cited, this Court in *Hechter* held as follows (94 Md. at 443, 50 A. at 1043, emphasis added):

> "[A]s we have held, the ... verdict, although it found only on the first and second counts and was silent as to the third and fourth, must be regarded, *as a matter of law,* as a verdict of not guilty on them...." [1]

This Court has consistently adhered to the holding in *Hechter.* Thus, in *Glickman v. State,* 190 Md. 516, 523, 60 A.2d 216, 219 (1948), the Court reiterated (emphasis added):

> "Since the decision of this Court in the case of *Hechter v. State,* 94 Md. 429, 50 A. 1041, 56 L.R.A. 457, there has been no question that a verdict, finding a traverser guilty under

---

1. In *Selvester v. United States,* 170 U.S. 262, 269–270, 18 S.Ct. 580, 582–583, 42 L.Ed. 1029, 1032 (1898), the case on which *Hechter* chiefly relied, the Supreme Court discussed at length the difference between the "silence" of the trier of facts on a particular count, which is " 'equivalent to acquittal,' " and the situation "where a jury have not been silent as to a particular count, but where, on the contrary, a disagreement is formally entered on the record." The Court pointed out that, in the latter situation, "a subsequent prosecution for the offense as to which the jury has disagreed ... would not constitute second jeopardy" (170 U.S. at 269, 18 S.Ct. at 583, 42 L.Ed. at 1032). The Supreme Court in *Selvester* indicated, however, that further prosecution on a count where there was silence would violate the double jeopardy prohibition. *See also Dealy v. United States,* 152 U.S. 539, 542, 14 S.Ct. 680, 681, 38 L.Ed. 545, 546 (1894), relied on by the Supreme Court in *Selvester* and by this Court in *Hechter.*

one count of an indictment containing several counts and being silent as to the remaining counts, is a valid verdict and *is equivalent to a verdict of not guilty as to the remaining counts.* This case expressly overruled the case of *State v. Sutton,* 4 Gill. 494, which held to the contrary."

Furthermore, the legal principle set forth in *Hechter* is fully applicable in a nonjury criminal case. In *Felkner v. State,* 218 Md. 300, 306, 146 A.2d 424, 428 (1958), Judge Hammond for the Court stated:

"The trial judge explicitly and specifically found Bafford and Felkner guilty on the first count and not guilty on the fifth count, but made no mention whatever of the second, third and fourth counts. This amounted to a finding of not guilty on the second, third and fourth counts. *Glickman v. State,* 190 Md. 516, 523 [60 A.2d 216]."

Similarly, *Reed v. State,* 225 Md. 566, 171 A.2d 464 (1961), was a nonjury case in which Chief Judge Brune for the Court held as follows (225 Md. at 570, 171 A.2d at 466):

"The absence of any docket entry recording the court's finding on count 14 has no effect upon the findings of guilt on counts 3, 4, 5, 6, 7, 10, 11, 12 or 13 nor upon the validity of the sentence imposed under those counts; but the absence of any finding on that count is equivalent to a finding of not guilty thereunder. Cf. *Hechter v. State,* 94 Md. 429, 50 A. 1041; *Glickman v. State,* 190 Md. 516, 60 A.2d 216; *Felkner v. State,* 218 Md. 300, 306, 146 A.2d 424."

*See Jackson v. State,* 231 Md. 591, 595–596, 191 A.2d 432, 434 (1963) ("The trial court made no finding as to the fourth count, and we have held that this is equivalent to an acquittal thereunder"). *See also, e.g., Huffington v. State,* 302 Md. 184, 190, 486 A.2d 200, 203 (1985); *Sweetwine v. State,* 288 Md. 199, 208–210, 421 A.2d 60, 65–67, *cert. denied,* 449 U.S. 1017, 101 S.Ct. 579, 66 L.Ed.2d 477 (1980); *Harrington v. State,* 17 Md.App. 157, 159, 300 A.2d 405, 407 (1973); *Williams v. State,* 9 Md.App. 447, 448–449 n. 1, 265 A.2d 266, 267 n. 1 (1970); *Gibson v. State,* 8 Md.App. 1, 4, 256 A.2d 890, 892 (1969), *cert. denied,* 257 Md. 733 (1970); *Jenkins v. State,* 3 Md.App. 243,

245, 238 A.2d 922, 924, *cert. denied,* 250 Md. 732 (1968); *Agresti v. State,* 2 Md.App. 278, 280 n. 1, 234 A.2d 284, 285 n. 1 (1967).

The principle that a verdict's silence on a count constitutes an acquittal is frequently dealt with in the context of the double jeopardy prohibition.[2] The two principles are often intertwined and considered together. *See, e.g., Selvester v. United States, supra,* 170 U.S. at 270, 18 S.Ct. at 583, 42 L.Ed. at 1032.

In *Green v. United States,* 355 U.S. 184, 190–191, 78 S.Ct. 221, 225, 2 L.Ed.2d 199, 206 (1957), where the defendant was convicted on a count charging second degree murder but the jury failed to return a verdict on a count charging first degree murder, the Supreme Court, in an opinion by Justice Black, held that the absence of a verdict on the count was "an implicit acquittal on the charge of first degree murder" and that, "under established principles of former jeopardy," the defendant "could not be retried for that offense." Later in the opinion, 355 U.S. at 194 n. 14, 78 S.Ct. at 227 n. 14, 2 L.Ed.2d at 208 n. 14, Justice Black noted that the bar "of former jeopardy does not rest on [the defendant's] conviction for second degree murder but instead on" the jury's failure to render a verdict on the first degree murder count.

This Court in several cases has discussed the principle that, under *Green,* a verdict's silence with regard to a count is ordinarily an implicit acquittal and bars further prosecution on that count. *See, e.g., Huffington v. State, supra,* 302 Md. at 190–191, 486 A.2d at 203–204 ("The Supreme Court ... treat[ed] the jury's silence as an implicit acquittal of first

---

**2.** Since *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the Double Jeopardy Clause of the Fifth Amendment is fully applicable to state criminal proceedings. The double jeopardy prohibition is also part of Maryland common law, guaranteed to the inhabitants of Maryland by Article 5 of the Maryland Declaration of Rights. *See, e.g., State v. Long,* 405 Md. 527, 535–536, 954 A.2d 1083, 1089 (2008); *State v. Taylor,* 371 Md. 617, 629–630, 810 A.2d 964, 971 (2002); *Farrell v. State,* 364 Md. 499, 504, 774 A.2d 387, 390 (2001), and cases there cited.

degree murder and [held] that the retrial of the charge of first degree murder violated Green's Fifth Amendment right not to be placed twice in jeopardy"); *State v. Moulden,* 292 Md. 666, 678, 441 A.2d 699, 705 (1982); *Sweetwine v. State, supra,* 288 Md. at 208–209, 421 A.2d at 65–66. *See also Price v. Georgia,* 398 U.S. 323, 328–329, 90 S.Ct. 1757, 1761, 26 L.Ed.2d 300, 305 (1970) (reaffirming the " 'implicit acquittal' " holding of the *Green* case); *Brazzel v. State of Washington,* 491 F.3d 976, 978–979, 981–982 (9th Cir.2007) (Discussing and applying the rule that the verdict's silence on a charge is an implied acquittal which bars further prosecution on the charge).

▪ Under double jeopardy principles, when action taken on a particular charge is, or legally amounts to, an acquittal, not only is a subsequent separate prosecution prohibited on that charge, but further prosecution on that charge in the same case is prohibited. *Smith v. Massachusetts,* 543 U.S. 462, 125 S.Ct. 1129, 160 L.Ed.2d 914 (2005), and cases there cited; *In re Kevin E.,* 402 Md. 624, 632–636, 938 A.2d 826, 830–833 (2008); *Giddins v. State,* 393 Md. 1, 18–30, 899 A.2d 139, 149–154 (2006); *State v. Taylor,* 371 Md. 617, 810 A.2d 964 (2002); *Farrell v. State,* 364 Md. 499, 506–507, 774 A.2d 387, 391–392 (2001); *Wright v. State,* 307 Md. 552, 561–573, 515 A.2d 1157, 1161–1170 (1986); *Brooks v. State,* 299 Md. 146, 472 A.2d 981 (1984); *Block v. State,* 286 Md. 266, 407 A.2d 320 (1979); *Pugh v. State,* 271 Md. 701, 319 A.2d 542 (1974).[3]

---

**3.** In *Pugh v. State,* 271 Md. 701, 705, 319 A.2d 542, 544 (1974), with regard to the finality which the law accords to an acquittal, this Court stated:

"From the earliest days, it has been clear that once a verdict of not guilty has been rendered at . . . a criminal trial, that verdict is final and cannot be set aside. Any attempt to do so by the prosecutor is barred by what at common law was the plea of autrefois acquit. Thus, in *State v. Shields,* 49 Md. 301, 303 (1878), our predecessors declined to construe a statute as permitting the State to appeal a verdict of acquittal, saying:

'It has always been a settled rule of the common law that after an acquittal of a party upon a regular trial on an indictment for either a felony or a misdemeanor, the verdict of acquittal can never afterward, on the application of the prosecutor . . . be set aside. . . .'

Thus, any action taken after the acquittal, which is inconsistent with the acquittal, is inconsistent with the double jeopardy prohibition. Such post verdict action, *e.g.,* making entries on the docket or directing that they be made, certainly can not change what in law is a "not guilty" verdict into a "guilty" verdict.

There are certain well-established exceptions to the principle that the absence of a verdict on a count amounts to an acquittal, and we shall discuss those exceptions later in this opinion.[4] Nevertheless, if none of the exceptions were applicable to the present case, when the trial judge as the trier of facts rendered the verdicts in this case without rendering any verdicts on counts 3 through 8, the defendant at that time would have been acquitted on counts 3 through 8. Such acquittals must be accorded finality.

## III.

In the view of Judge Harrell's concurring and dissenting opinion, the absence of verdicts on counts 3 through 8 is an "ambiguous" or "uncertain[ ]" factual matter to be clarified by "surrounding circumstances," namely (1) remarks made prior to closing arguments relating to post-verdict sentencing, and (2) the later clerical event of making entries on the docket. The absence of verdicts on certain counts in a criminal case is not, however, a factual matter to be clarified by earlier remarks of the trial judge or later acts by the clerk. Instead, as held in the leading Maryland case, *Hechter v. State, supra,* 94 Md. at 443, 50 A. at 1043, "silen[ce] as to the third and fourth [counts], *must* be regarded, *as a matter of law,* as a verdict of not guilty on them. . . ." (Emphasis added).

---

The Court in Shields went on to point out that it made no difference whether the acquittal was based on a mistake of law or a mistake of fact."

The language from Shields has been reiterated time after time by this Court.

**4.** As discussed later, one of the exceptions may well be applicable in this case, at least in part.

The concurring and dissenting opinion also treats this case as one where the trial judge intended to deliver guilty verdicts on counts 3 through 8 and merge them for sentencing, but the judge simply overlooked those counts when rendering the verdicts. The Supreme Court in *Dealy v. United States,* 152 U.S. 539, 542, 14 S.Ct. 680, 681, 38 L.Ed. 545, 546 (1894), also with regard to a count which was not referred to when the verdicts were rendered, pointed out that "[i]t may have been simply overlooked by the [trier of facts]." Nonetheless, the Supreme Court in *Dealy* went on to hold that the absence of a verdict on that count "was doubtless equivalent to a verdict of not guilty as to that count." *Ibid.* In *Dealy,* the legal principle that silence on a count constitutes an acquittal was fully applicable even if the reason for the silence was that the matter was "overlooked." It is noteworthy that *Dealy* was relied upon by both the Supreme Court in *Selvester v. United States, supra,* and by this Court in *Hechter v. State, supra.*

The theory set forth in the concurring and dissenting opinion, that "a reviewing court may look to the relevant surrounding circumstances to determine the intent of the trier of fact[s]" when the trier of facts fails to render verdicts on some counts of the charging document, is not supported by any opinion of this Court. The only opinion of this Court cited in support of this theory is *Simmons v. State,* 165 Md. 155, 167 A. 60 (1933). Judge Harrell's concurring and dissenting opinion relies upon the first part of the following sentence from *Simmons,* 165 Md. at 169, 167 A. at 66 (emphasis added):

"Where the meaning of the verdict is so unmistakable, mere inartificiality *in its form* will not be sufficient to defeat justice by a nullification of a verdict which plainly declared the intent of the jury to convict on all the counts charging the crime of false pretenses and to acquit on all the counts charging the crime of larceny."

The above sentence relates to the *form* of a verdict and not the *absence* of a verdict on a particular count. Also, it is stated in the above-quoted sentence that the source of the plain "intent" is the verdict itself; there is no reference to "surrounding circumstances."

Moreover, when the language of *Simmons* is viewed in context, it is clear that *Simmons* furnishes no support for Judge Harrell's theory. The indictment in *Simmons* contained eighteen counts which "charged alternately the crimes of larceny and false pretenses." 165 Md. at 169, 167 A. at 66. Instead of separate verdicts on each of the eighteen counts, the jury's verdicts were embodied in a single sentence stating: "Not guilty of larceny, but guilty of false pretenses on all counts of the indictment, with recommendation of mercy by the court." 165 Md. at 169, 167 A. at 66. The issue raised by the defendant Simmons in this Court was that "the *form* of the verdict" was erroneous. (*Ibid.*, emphasis added). No argument was made that the verdict was ambiguous. The Court's statement, that the jury's intent to convict on certain counts and acquit on certain counts was plain, simply pointed out that the jury's intent was clearly set forth in the verdict despite the challenged *form* of the verdict. Nothing was said in the *Simmons* opinion suggesting that "surrounding circumstances" could be examined to determine the intent of the trier of facts.[5]

---

5. To the contrary, the Court in *Simmons* examined only the language of the verdict itself. After stating that the jury's finding "was responsive, certain and complete, within the comprehension of laymen, and, so, of the court," 165 Md. at 170, 167 A. at 66, this Court continued (*ibid.*):

> "As said in *Bishop's New Criminal Procedure*, sec. 1005 a(1): 'The language of the verdict, being that of "lay people," need not follow the strict rules of pleading, or be otherwise technical. Whatever conveys the idea to the common understanding will suffice. And all fair intendment will be made to support it.' Therefore, if the counts are numbered, the verdict may be guilty on specified numbers, and not guilty on others; or the acquittal or conviction may be by naming the offense, as if there are counts for larceny and for embezzlement the verdict of 'guilty of embezzlement and not guilty of larceny' will be as good as giving the number of the embezzlement count."

The Court of Special Appeals in *Pettiford and Berry v. State*, 8 Md.App. 560, 569, 261 A.2d 216, 221 (1970), also cited in Judge Harrell's concurring and dissenting opinion, similarly misinterpreted the *Simmons* case. In addition, the intermediate appellate court in *Pettiford* erroneously called the *Simmons* verdict "indefinite." This Court in *Simmons*, however, characterized the verdict as "unmistakable" and one "which plainly declared the intent of the jury." 165 Md. at 169, 167 A. at 66.

Furthermore, neither of the two cases from other jurisdictions, relied on by Judge Harrell, supports his view. *State v. Brauer*, 16 Neb.App. 257, 743 N.W.2d 655 (2007), did not involve the absence of a verdict on a count or anything remotely similar to such absence.[6] The other out-of-state case cited by Judge Harrell, *State of Missouri ex rel. Beaird, Prosecuting Attorney v. Del Muro*, 98 S.W.3d 902 (Mo.App. 2003), likewise did not involve the absence of a verdict on a count or counts in a criminal case. In fact, there were no verdicts or counts, and *Del Muro* was not a criminal case.[7]

---

**6.** Instead, *Brauer* concerned an argument that a conviction was ambiguous because the word "or" was used in connection with two related crimes involving alcohol and driving. The Nebraska Court of Appeals held that Brauer's argument lacked merit and that it was clear that the defendant was convicted of both offenses. The Nebraska Court of Appeals, in its review of the applicable law, stated (16 Neb.App. at 261, 743 N.W.2d at 658–659, internal quotation marks omitted, emphasis added):

"Resolution of this issue requires us to ascertain the meaning of the county court's judgment. In other contexts, it has been recognized that *the meaning of a judgment is determined, as a matter of law, by its contents* .... Unless the language used in a judgment is ambiguous, the effect of the decree must be declared in the light of the literal meaning of the language used."

In the present case, there is no verdict "language" with respect to counts 3 through 8, and, with respect to the total verdicts, there are no words which are even arguably ambiguous. Moreover, the concurring and dissenting opinion's reliance upon so-called "surrounding circumstances" is inconsistent with the Nebraska court's statement that the meaning of a judgment is determined, as a matter of law, by its contents.

**7.** *Del Muro* was an original certiorari action in an intermediate appellate court, authorized under Missouri law, to review the order in a habeas corpus case granting a writ of habeas corpus. The basis for the writ was that the petitioner's right of due process was violated in an earlier and separate revocation of probation case. In its opinion upholding the issuance of the writ, the Missouri Court of Appeals indicated that the language of the judgment in the probation revocation case was ambiguous with regard to the grounds for revocation. Accordingly, the court in the certiorari case stated that it was required to review the record in the probation revocation case, and specifically review the probation revocation "court['s] ... separate findings of fact and conclusions of law [entered] simultaneously with its judgment." *Del Muro*, 98 S.W.3d at 909. While this statement in the Missouri court's opinion is obviously sound, it has no relevance to the case at bar. To repeat, there is no ambiguous language in the verdicts ren-

In addition to being unsupported by any case law, the approach suggested by Judge Harrell's concurring and dissenting opinion is flawed and carries with it the danger of serious miscarriages of justice in criminal cases. The "surrounding circumstance" upon which Judge Harrell primarily relies is the colloquy between the trial judge and the prosecuting attorney, prior to closing arguments, concerning possible mergers for purposes of sentencing if guilty verdicts were later rendered. The reasoning seems to be that the trial judge disclosed his intent to merge counts 3 through 8 into count 2 if there was a guilty verdict on count 2, and this in turn, according to Judge Harrell's opinion, revealed "that the trial judge's crystal clear intent was to ... render guilty verdicts also on Counts 3 through 8."

Assuming *arguendo* that this was the judge's intent at the time, a trial judge's intent prior to closing arguments may be entirely different from his or her intent at the time verdicts are rendered. The apparent reasoning in the concurring and dissenting opinion makes closing argument entirely superfluous. Moreover, trial judges often change their minds during trial proceedings. A detailed discussion of a judge's ability in this regard is contained in *Doering v. Fader*, 316 Md. 351, 558 A.2d 733 (1989).

The concurring and dissenting opinion also relies on the clerk's docket entries stating that counts 3 through 8 are to merge. This is a "bootstrap" argument, as the whole point of the present appellate proceeding is to correct the erroneous docket entries.[8] The record in the present case shows that,

---

dered in the present case. The verdicts were, and the applicable law is, clear.

**8.** In addition, court clerks are not infallible, and erroneous docket entries do occur. *See Waller v. Maryland National Bank*, 332 Md. 375, 379, 631 A.2d 447, 449 (1993) (In a case involving incorrect docket entries, this Court pointed out "that when there is a conflict between the transcript of a trial and the docket entries, the transcript, unless shown to be in error, will prevail"); *Shade v. State*, 18 Md.App. 407, 411, 306 A.2d 560, 562 (1973) ("The transcript of the trial, unless shown to be in error, takes precedence over the docket entries"). *See*

when the verdicts were rendered, there was a failure to render verdicts on counts 3 through 8. The record prevails over the erroneous docket entries.

The importance of certain and accurate criminal verdicts, in order to insure fairness and justice in criminal cases, has been emphasized by this Court on numerous occasions. More than 100 years ago, our predecessors recognized that the legal requirements applicable to the rendition of verdicts in criminal cases "are supported by reasons of justice and propriety" and are "to secure certainty and accuracy...." *Givens v. State*, 76 Md. 485, 486–488, 25 A. 689, 689 (1893). Consequently, our opinions have consistently held that the legal requirements applicable to the rendition of verdicts be strictly complied with. *See, e.g., State v. Santiago*, 412 Md. 28, 985 A.2d 556 (2009); *Jones v. State*, 384 Md. 669, 866 A.2d 151 (2005); *Smith v. State*, 299 Md. 158, 165, 472 A.2d 988, 990 (1984); *Pugh v. State, supra*, 271 Md. 701, 319 A.2d 542; *Heinze v. State*, 184 Md. 613, 42 A.2d 128 (1945).

Although most of the above-cited cases involve requirements applicable to jury verdicts, it is just as important that there be certainty, accuracy, and fairness in the rendition of nonjury verdicts. The rule that absence of a verdict on a particular count is, as a matter of law, a verdict of not guilty fulfills these objectives. The concurring and dissenting opinion's speculation concerning the trial judge's intent when he failed to render verdicts on certain counts, based on the judge's comments at other times during the trial, does not.

## IV.

We now turn to the exceptions to the rule that the absence of a verdict on a count constitutes an acquittal. It was earlier noted, *supra* n. 1, that a "hung jury" on a count is an

also, e.g., *Carey v. Chessie Computer*, 369 Md. 741, 749 n. 4, 802 A.2d 1060, 1064–1065 n. 4 (2002); *Osborn v. Bunge*, 338 Md. 396, 401, 658 A.2d 1102, 1104 (1995); *Savoy v. State*, 336 Md. 355, 360 n. 6, 648 A.2d 683, 685 n. 6 (1994); *Roberts v. State*, 219 Md. 485, 488, 150 A.2d 448, 450 (1959).

exception. *See Selvester v. United States, supra,* 170 U.S. at 269–270, 18 S.Ct. at 582–583, 42 L.Ed. at 1032 ("[I]f, on the other hand, after the case had been submitted to the jury, they reported their inability to agree, and the court ... discharged them, such discharge would not be equivalent to an acquittal").

Another exception is where the absence of a verdict on a count is pursuant to the court's instructions or the directions on a verdict sheet. *See Cichos v. Indiana,* 385 U.S. 76, 79–80, 87 S.Ct. 271, 273, 17 L.Ed.2d 175, 178 (1966)(The defendant was charged with two offenses, and the trial court, in accordance with state practice with regard to the particular charges, told " 'the jury to return a verdict on only one of the charges' "); *State v. Moulden, supra,* 292 Md. at 678–679, 441 A.2d at 705–706 ("Because of the court's instruction to the jury that it need not consider" one count if it found the defendant guilty on another count, and since it did find the defendant guilty on the latter count, "in a real sense the [former] count was not submitted to the jury for its consideration. * * * Consequently, in the present case we believe that the jury's silence regarding the [former] count did not amount to an acquittal under the principles set forth in *Green v. United States* "). *Cf. State v. Frye,* 283 Md. 709, 723–724, 393 A.2d 1372, 1379–1380 (1978)(This Court referred to the "normal" practice with regard to certain charges of instructing the jurors that, if the verdict on one count is guilty, they should not consider the other count).

■ A third exception to the rule may be applicable to some of the counts in the present case. The exception is where there is a guilty verdict on a count charging a greater offense, and silence on a count charging an offense which is lesser included under the so-called required evidence test.[9] This exception was recognized in Maryland when *State v. Sutton,*

---

9. The test is sometimes referred to as the elements test, or the same evidence test, or the *Blockburger* test. This last name of the test comes from a leading Supreme Court case, *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

*supra*, 4 Gill. 494, was the prevailing precedent, and it has continued to be recognized after *Hechter v. State, supra,* 94 Md. 429, 50 A. 1041. As our cases have pointed out, the exception is based on simple logic. If the greater offense contains all of the elements of the lesser included offense, a guilty verdict on the count charging the greater offense necessarily means that the defendant was also guilty of the lesser included offense. *See, e.g., Manly v. State,* 7 Md. 135, 150–151 (1854) ("So on an indictment containing counts for robbery, and an assault with intent to rob, ... [and if] the accused be convicted of the actual robbery, how could the jury with any consistency say that he was not guilty of the intent to rob? * * * The higher crime necessarily merges the inferior offence"); *Stevens v. State,* 66 Md. 202, 204, 7 A. 254, 255 (1886)(The defendant was charged in the first count with rape and in the second count with assault with intent to rape, and the jury found him guilty of rape but delivered no verdict on the second count. The Court, saying that "[i]t is manifest that the first count includes the offence set forth in the second," held that "when there is a verdict of guilty on the first count there is a merger of the minor offense"); *Murphy v. State,* 184 Md. 70, 81–82, 40 A.2d 239, 244 (1944). *See also State v. Moulden, supra,* 292 Md. at 678–679, 441 A.2d at 705–706.[10]

## V.

In the case at bar, the Court of Special Appeals erroneously held that the rule treating silence on a count as an acquittal "applies even where the court renders a verdict on greater inclusive counts and is silent as to the lesser included counts." Consequently, the Court of Special Appeals did not analyze the elements of the offenses charged in counts 3 through 8 to determine whether they, or some of them, were lesser included offenses under the required evidence test.

---

10. Sometimes, both the exception when the jury's silence is pursuant to an instruction and the exception for a lesser included offense are applicable in the same case. *State v. Moulden,* as well as some of the other cases previously cited, are examples of this.

Furthermore, neither the trial court nor the parties have done so.[11]

Accordingly, we vacate that portion of the Court of Special Appeals' judgment which directs the Circuit Court to correct the docket entries regarding counts 3 through 8. We remand the case to the Court of Special Appeals for that court to determine whether the offenses charged in counts 3 through 8, or any of them, are lesser included offenses under the required evidence test. The docket entries should be corrected only with respect to those offenses which are not included within the crimes charged in counts 1 or 2.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND VACATED IN PART. CASE REMANDED TO THE COURT OF SPECIAL APPEALS FOR FURTHER PROCEEDINGS AS DIRECTED IN THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO ABIDE THE DECISION OF THE COURT OF SPECIAL APPEALS.*

HARRELL, MURPHY and ADKINS, JJ., Concur and Dissent.

---

**11.** The colloquy between the trial judge and the prosecuting attorney prior to closing arguments, discussing possible merger, did not involve any discussion of the elements of the offenses charged in counts 3 through 8. In addition, the discussion did not mention the required evidence test. There are, under Maryland law, grounds for merger other than the required evidence test, such as the rule of lenity, the fact that historically certain offenses merged into others, or considerations of fairness in a particular case. *See, e.g., Williams v. State,* 323 Md. 312, 321–323, 593 A.2d 671, 676 (1991); *Monoker v. State,* 321 Md. 214, 222–224, 582 A.2d 525, 529 (1990); *White v. State,* 318 Md. 740, 744–748, 569 A.2d 1271, 1273–1275 (1990).

In this Court, the State in a footnote in its brief (p. 16) asserts that "two of the lesser counts merged upon conviction of the greater counts pursuant to the required evidence test." These were counts 5 and 8. The State does not, however, discuss the elements of the offenses charged in counts 5 and 8, and it does not mention whether counts 3, 4, 6, or 7 charged lesser included offenses under the required evidence test.

 

HARRELL, J., concurring and dissenting.

Although I have no huge quarrel with the opportunity presented by the judgment reached by the Majority Opinion allowing the Court of Special Appeals the opportunity to engage in an analysis of whether lesser included offenses existed here, I submit that the record is adequate to conclude that the Circuit Court for Charles County actually convicted Prue under Counts 3 through 8. The Majority Opinion opines that further proceedings in the Court of Special Appeals are required in order to determine whether any or all of the offenses charged in Counts 3 through 8 constitute lesser included offenses of the flagship charges, and that, to the extent Counts 3 through 8 are not lesser included offenses, the docket entries should be changed to reflect acquittals on those counts. In my view, such a remand is unnecessary because the record, including the trial judge's comments immediately prior to closing arguments regarding the potential merger of Counts 3 through 8 with Count 2 if a guilty verdict on Count 2 were to be rendered, and the consistent docket entries reflecting that result, demonstrate clearly the trial judge's unambiguous intent to convict Respondent on Counts 3 through 8. As such, I would hold that the trial judge, in fact, was not silent as to verdicts on Counts 3 through 8 when the record as a whole is considered, and that the docket entries should not be amended.

In reaching its conclusion that the trial judge was silent as to Counts 3 through 8, the Majority Opinion asserts that, because the rendition of a formal verdict in a bench trial is confined ordinarily to a specific portion of the trial, recourse to relevant comments made by the trial judge immediately prior to closing arguments or relevant matters occurring immediately following formal announcement of the verdict is not permitted in resolving what was the intended disposition of the charges. In this regard, I disagree with the Majority Opinion.

Where there is uncertainty regarding a verdict, a reviewing court may look to the relevant surrounding circumstances to determine the intent of the trier of fact. *See Pettiford v.*

*State,* 8 Md.App. 560, 569, 261 A.2d 216, 221 (1970) (citing *Simmons v. State,* 165 Md. 155, 167 A. 60 (1933), for the proposition that, in a bench trial context, "[w]hen the trial judge has caused some uncertainty by not making a specific finding of guilt, . . . the reviewing court may look to the surrounding circumstances to determine the trial judge's intent"); *see also Simmons,* 165 Md. at 169, 167 A. at 66 ("Where the meaning of the verdict is so unmistakable, mere inartificiality in its form will not be sufficient to defeat justice by a nullification of a verdict which plainly declared the intent of the jury . . . ."); *State v. Brauer,* 16 Neb.App. 257, 743 N.W.2d 655, 658–60 (2007) (noting that "resort may be had to the entire record" to determine the intent of an assertedly ambiguous bench verdict, where the trial court's recitation of guilt stated that he found defendant guilty of driving under the influence of alcohol "or" driving while having an impermissible concentration of alcohol in his blood, two alternate theories of guilt presented by the State); *State ex rel. Beaird v. Del Muro,* 98 S.W.3d 902, 909 (Mo.Ct.App.2003) (holding that, where the trial court's judgment of conviction assertedly was ambiguous because it stated that defendant violated the terms of his probation in "one or more" of four ways, the reviewing court was empowered to "ascertain the court's intent from the record"). As part of the "surrounding circumstances," a reviewing court may consider relevant statements and exchanges appearing in the record outside the formal recitation of the verdict, as well as the docket entries purporting to reflect the verdict. *Barber v. State,* 16 Md.App. 235, 242, 295 A.2d 814, 818 (1972) ("[W]hen the language used unmistakably expresses a conclusion, technicalities in the form of the verdict cannot be used to invalidate that verdict. The docket entry as recorded correctly reflects the jury's verdict. . . ."); *Pettiford,* 8 Md.App. at 569, 261 A.2d at 221–22 ("Further, we note that the clerk of the court reached a similar interpretation of the judge's words as evidenced by the docket entry 'guilty addendum.' ").

As is known by most persons who have been engaged to be married and by many professional athletes and rock-and-roll

stars with pierced ears, diamonds are graded, among other things, for clarity; that is, the relative absence or appearance of internal "inclusions" and external "blemishes." Under the rating system of the Gemological Institute of America (GIA), a "flawless" category diamond (no flaws visible under 10X magnification) receives the grade of "FL." The next highest category, "internally flawless" (meaning no inclusions and only small blemishes visible under the same magnification), receives the grade of "IF." If the record of the present case were a diamond, it would be one of "IF" clarity regarding the intention of the trial judge in rendering his verdict.

On 9 March 2007, after the parties rested their cases, but before closing arguments, the State announced, in open court, that it would be focusing on Counts 1 and 9, because the remaining Counts would merge into Count 1 for sentencing purposes.[1] Considering the trial judge's recitation of the verdict, his extensive findings of fact in support of the guilty verdicts,[2] his comments prior to closing argument regarding

---

**1.** Although the colloquy does not make clear, merger, as discussed in this context, was alluded to as a sentencing principle. *See Christian v. State*, 405 Md. 306, 321, 951 A.2d 832, 840–41 (2008); *Abeokuto v. State*, 391 Md. 289, 352–59, 893 A.2d 1018, 1055–58 (2006); *Dixon v. State*, 364 Md. 209, 236–37, 772 A.2d 283, 299 (2001).

**2.** Immediately prior to reciting his verdicts on Counts 1, 2, and 9, the trial judge stated on the record extensive findings of fact supporting his decision:

> Now, as to the actions of the defendant at the time in question.
> First, we have him with a blood alcohol concentration, almost double of what the legal, per se definition is in Maryland.
> He was aware of that, because he tried to avoid the police officers on the sidewalk at Legends [a bar].
> He allowed the decedent jointly with himself to operate the motorcycle, with the knowledge, a, that she had been drinking. And as I note she was over the per se limit of under the influence.
> He knew she had only driven in this strange tandem way on five occasions, and she was not licensed for a motorcycle.
> He facilitated the motorcycle to exceed twice the posted speed limit, by telling the decedent when he wanted to shift to a higher gear. In other words if they had left it in first gear, obviously they couldn't have gotten up to 75 miles per hour. I think that's common sense.

merger of Counts 3 through 8 with Count 2 if a conviction on Count 2 were to be rendered,[3] and the consistent docket entries reflecting that result made shortly after the trial judge's announcement of the verdict,[4] it is pellucid that the

> The defendant and the decedent engaged in this bifurcated operation, where the decedent operated the hand-bars and the accelerator. And obviously that's an impediment to both of them, and to their safety, if an emergency situation arouse (sic), and that's what basically happened here. She was a total intoxicated, inexperienced driver, on a motorcycle, doing 75 miles an hour, at night, and she lost control. She failed to keep her vehicle under control.
>
> So I am convinced that such conduct evidence is a wanton or reckless disregard for human life.

3. The record reflects the following colloquy between the State and the trial judge immediately prior to closing argument:

> STATE: Your Honor, I think when all is said and done, out of the nine counts you have on the indictment, there are only two counts the court needs—needs to decide. That would be count one, the manslaughter count, and count nine, the possession of marijuana account (sic).
>
> \* \* \*
>
> STATE: Of the other eight counts, counts two through eight, we're going—are going to merge into count one, manslaughter. Everything else is (unintelligible) defense. So let's talk about—let's talk about that. Lastly before—
>
> THE COURT: Does two merge?
>
> STATE: Yes.
>
> THE COURT: Are you sure?
>
> STATE: Yes, because it is going to be—all count two is, is a homicide under the influence. A lesser included of manslaughter. Manslaughter requires gross negligence. Well okay, I guess we could take—we could say—
>
> THE COURT: There's a different element.
>
> STATE:—count two—count two requires the BAC, plus negligence, plus death. Where manslaughter requires gross negligence plus death.
>
> THE COURT: That's right.
>
> STATE: So the court gets the sentencing—I don't know if the court can be candid to both separate sentences for those two counts.
>
> THE COURT: Yeah, so, I would agree with you on the other ones though. I think the other ones pretty well merge into [Count] two.
>
> \* \* \*
>
> STATE: But I think in terms of sentencing, should the court find him guilty in both counts one and two, I think the court (unintelligible) sentences.

4. Specifically, the docket entry for 9 March 2007 reflects:

> "Opinion given by Court.

trial judge's crystal clear intent was to (and in fact did) render guilty verdicts also on Counts 3 through 8. The record of the discussion between the trial judge and the State prior to closing argument demonstrates that the trial judge agreed (and the defense apparently did not disagree) that any convictions on Counts 3 through 8 would merge with Count 2 upon a finding of guilt on Count 2, due to the former being lesser included offenses of the flagship Count 2. In addition, the clerk's docket entry regarding the trial judge's verdict, stating that Counts 3 through 8 merged with Count 2, provides a clear indication and understanding of that intent on the part of the trial judge with regards to those counts. Despite his omission in the formal oral rendition of the verdict of specific guilty verdicts for each count of the indictment, the trial judge intended to find Respondent guilty of Counts 3 through 8 by virtue of finding him guilty of Count 2. Thus, I would hold that the trial judge in fact did render verdicts as to Counts 3 through 8 and that, therefore, the docket entries should not be amended. As such, remand to the Court of Special Appeals for further consideration regarding whether Counts 3 through 8 constitute lesser included offenses is unnecessary, although I am confident that court will conclude that they are lesser included offenses, whereupon this case will be in the same posture as I propose to leave it now, affirmance of the trial court's judgments. On this record, Prue is not entitled to the potential windfall delivered by the Majority opinion.

Judges MURPHY and ADKINS authorize me to state that they join in the views expressed in this concurring and dissenting opinion.

---

Court finds Deft guilty of:
Count 1–Negligent Manslaughter–Auto/Boat/Other Vehicle
Count 2–Negligent Homiside (sic) Other Vehicle Under Influence
Count 9–Possession–Marijuana
Count 3 thur (sic) 8 to merge with Count 2."